No. 40,854

B & S Enterprises, Inc., *Appellant,* v. Sam E. Rudd, Elenore Rudd, Leonard A. Levand and Celia Levand, *Appellees.*

(324 P. 2d 515)

Opinion filed April 12, 1958.

*W. A. Kahrs,* of Wichita, argued the cause, and *Robert H. Nelson* and *Patrick F. Kelly,* both of Wichita, were with him on the briefs for the appellant.

*H. E. Jones* and *Richard Jones,* both of Wichita, argued the cause, and *A. W. Hershberger, Wm. P. Thompson, Jerome E. Jones,* and *William E. Palmer,* all of Wichita, were with them on the briefs for the appellees.

The opinion of the court was delivered by

Parker, C. J.: This was an action for the partition of real property owned by tenants in common. The appeal is from an order overruling plaintiff's exceptions to the report of the commissioners; the approval of that report, wherein the real estate was partitioned among the respective owners in kind; and that part of the judgment partitioning and assigning such real estate to the parties in conformance with such report.

Plaintiff, B & S Enterprises, Inc., commenced this action by filing a petition in the district court of Sedgwick County containing two causes of action.

The first cause of action alleged that it was the owner of an undivided six-eighths interest and that each of the defendants (Sam E. Rudd, Elenore Rudd, Leonard A. Levand and Celia Levand) owned an undivided one-sixteenth interest in and to the South Half (S/2) of the Southwest Quarter (SW/4) of the Southwest Quarter (SW/4) of Section 4, Township 27, Range 1 East of the 6th P. M., Sedgwick County, Kansas, except the right-of-way of the Atchison, Topeka and Santa Fe Railway and North Wichita Drainage Canal and easements of record and the East thirty (30) feet of said South Half (S/2) of the Southwest Quarter (SW/4) of the Southwest

Quarter (SW/4) of Section 4, Township 27, Range 1 East of the 6th P. M., Sedgwick County, Kansas; that such property was susceptible of being partitioned; and that it desired to have and own its share therein severalty.

The second cause of action alleged that the property sought to be partitioned and the improvements thereon were leased to various persons, companies and corporations and that pending the final determination of the case a receiver should be appointed for the purpose of collecting rents, paying taxes and maintaining such property, all in accord with the orders of the court.

In the prayer of the petition plaintiff asked that partition of the real estate be made according to the respective interests of the parties or if partition could not be made without manifest injury that it be appraised and sold and for the appointment of a receiver.

In passing it is to be noted proceedings had in the court below with respect to the second cause of action are not involved on this appeal and require no further mention.

So far as pertinent to the issues here involved it should be stated defendants' answer discloses they were each the owners of a one-sixteenth interest in the involved real estate, alleged such property was susceptible of partition in kind among the parties, and that they would be placed at a financial disadvantage if it were sold, and prayed for the appointment of commissioners with directions to allot them particular portions of the property.

The reply deals with allegations of the answer, heretofore noted as of no consequence to the issues, and prays that the property be partitioned in accord with the laws of the State of Kansas.

On May 31, 1956, the case came on for trial upon the issues joined by the pleadings before the Hon. Howard C. Kline, judge of the district court of Sedgwick County, division No. 2, where, after introduction of evidence and arguments of counsel, the court found that the interests of the respective parties to be as set forth in such pleadings; that the real estate therein was subject to partition and that commissioners should be appointed to make partition as provided by law. In the same order and judgment the court appointed Richard R. Santee, L. W. Roberts and Nestor Weigand, as commissioners, directing them to make partition of the real estate and personal property among the parties according to their respective interests, if such division could be made without manifest injury, but if in their opinion and judgment partition

could not be so made then to make a valuation and appraisement of the property and file their report with the court. Such order and decree also directed the commissioners to take and subscribe to an oath as provided by law before entering upon their duties and provided that after doing so a certified copy of such order should be delivered to each commissioner, which order would be his authority to proceed to make partition of the property as therein directed.

Shortly after making the foregoing order and decree defendants filed a motion, stating that they had a family community interest in the property and asking that the commissioners be directed to consider such interests as a unit in deliberations concerning partition of the property as theretofore directed by the court. The court's ruling on this motion reads:

"That said motion should be sustained in that the Commissioners, in addition to the instructions heretofore given them by the Court, are hereby instructed to report back to the Court all methods and plans for the partition of the property which they deem feasible and which may include a plan for the grouping of the respective 4/16ths interests of the defendants in a contiguous area so as to constitute a whole."

Some three months after their appointment the commissioners filed their final report with the court wherein they found that, in their considered and unanimous judgment, partition in kind of the real and personal property in the estate could be made among the parties according to their respective interests without manifest injury to the property or the parties in the manner therein described. This was a lengthy document which, it may be added, when carefully read and examined disclosed the expenditure of a great amount of time, work and effort on the part the commissioners, as well as the consulting engineer and the technical adviser referred to in the first paragraph of the findings of fact to be presently mentioned. Such report contained the formal report by the commissioners as well as findings of fact made by them. In addition it included a detailed description of each of the buildings located on the property, photographs thereof, and a detailed description of equipment located in and a part thereof. It also set forth much additional information, all with respect to such property, including lease expiration dates, monthly rentals, surveys and financial statements.

From what has been heretofore stated it is obvious that limits of time and space preclude quotation or detailed reference to every-

thing covered by the complete report of the commissioners. However, in view of their importance, we have decided to attach copies of the formal report and findings of fact to this opinion as appendixes, identified as "A" and "B" respectively.

Shortly after the commissioners' report was returned the plaintiff filed exceptions thereto which read:

"COMES Now B & S Enterprises, Inc., plaintiff herein and excepts and objects to the report of the commissioners filed in the above entitled matter for the reason that said report and partition of said real estate insofar as the plaintiff is concerned is inequitable and unjust. That said commissioners have failed to properly regard and consider valuations, income, leases, frontage, future development of the area, taxes and various other factors involving an equitable partition. That the area partitioned to the defendants far exceeds a one-fourth (¼) interest in the area sought to be partitioned as to size and valuation and constitutes an inequality in the division made insofar as plaintiff is concerned. That if such partition is approved by the court manifest injury will result to the plaintiff herein. Plaintiff alleges that said report should be rejected and set aside by the court and new commissioners appointed in accordance with General Statutes of Kansas, 1949, and supplements thereto, Section 60-2108."

Following the filing of the foregoing exceptions the issues raised thereby were presented to and disposed of by the Hon. Henry E. Martz, judge of the district court of Sedgwick County, division No. 5, in a full and extended trial. Upon hearing all evidence, arguments of counsel and after taking the case under advisement such court ultimately notified attorneys for the parties that it had viewed the property, reviewed and considered the record and briefs of counsel and found that plaintiff had failed to show good cause why its exceptions and objections to the report of the commissioners should be sustained.

Thereupon, according to pertinent portions of the journal entry, approved by counsel for all parties, the court overruled plaintiff's motion for a new trial, approved the report of the commissioners and rendered judgment partitioning and setting aside to Sam E. Rudd, Elenore Rudd, Leonard A. Levand and Celia Levand, Parcels "A" and "B" of the real estate, describing such Parcels as they are described in the report of the commissioners (See Appendix "A") and partitioning and setting aside to B & S Enterprises, Inc., Parcel "C" of the real estate, describing that Parcel as it is described in such report. (See Appendix "A.") In addition the court found that such tracts of land were partitioned to the parties subject to utility easements and present utility lines wherever located and that the owners of each of such tracts were granted the right to use and extend the present rail facilities.

For purposes of giving our readers a better understanding of the disposition made of the involved property, under the commissioners report and the foregoing judgment, we include in this opinion an aerial photograph which was introduced by plaintiff as a part of its evidence in the court below. In giving consideration to this photograph it must be remembered it was taken out of an airplane, other than at a vertical position, thus giving a distorted view as to distances and is not to be regarded as accurately reflecting the metes and bounds of Parcels "A," "B" and "C" as described in Appendix "A" and the journal entry of judgment. It should also be kept in mind that identifying numbers appearing on certain buildings shown in the photograph are not all inclusive as to buildings located on the premises, e. g., at least four of the buildings located on Parcel "C," some of them being the largest buildings on that tract, are not numbered, while an open lumber storage building and a closed lumber shed, located on Parcel "A" are not identified by number.

At the outset it should be stated there is no question regarding the force and effect of the provisions of our statute relating to a partition proceeding such as is here involved.

G. S. 1949, 60-2105 provides that upon the making of a partition order the court shall appoint three commissioners to make partition into the requisite number of shares and that for good and sufficient reasons it may direct such commissioners to allot particular portions to any one of the parties.

G. S. 1949, 60-2107 directs the commissioners to make partition of the property among the parties according to their respective interests, *if such partition can be made without manifest injury,* but if such partition cannot be so made, they are to make a valuation and appraisement of the property, valuing each tract separately where there are more than one; and directs a prompt report of their proceedings to the court.

G. S. 1949, 60-2108 permits any party to file exceptions to the report of the commissioners, and provides the court may for *good cause* set aside such report and appoint other commissioners or refer the matter back to the same commissioners.

G. S. 1949, 60-2114 gives the court full power to make an order not inconsistent with other provisions of the statute relating to partition that may be necessary to make a just and equitable partition between the parties, and secure their respective interests.

It may be stated further that the foregoing sections of the statute give the court having jurisdiction of a partition proceeding full power and authority over partition commissioners, including the right to hear and determine exceptions to their report. And added they do not contemplate a trial *de novo* of the propriety of the action of a trial court in either refusing to set aside a report of that character or in setting such a report aside for good cause on appellate review. Indeed our decisions definitely disclose action of that nature rests so much in the sound discretion of a trial court that it will not be disturbed on appeal unless the record makes it appear such action was wholly unwarranted and clearly amounts to abuse of discretion.

See *Sawin v. Osborn* 87 Kan. 828, 832, 126 Pac. 1074, where, after pointing out the theory of law is that property will be partitioned among the parties where it can be equitably done and is not to be sold and the proceeds to be divided except where it is not susceptible of an equitable partition, it is said:

". . . The court is vested with the discretion and power to determine whether it is equitable and practicable to give each his share, and it may, for good and sufficient reasons, allot particular portions of the property to any one of the parties." (p. 832.)

See, also, *Johnson v. Burns*, 160 Kan. 104, 159 P. 2d 812, where it is held:

"In an action to partition real estate the trial court has power to make any order necessary to make a just and equitable partition between the parties. The record in this case is examined and it is held that there is nothing in the record to justify this court in holding that the trial court abused its discretion." (Syl. ¶ 3.)

And, at page 110 of the opinion, indicated that this court would not interpose its judgment of what is fair and equitable for that of the trial court.

And see *Peterson v. Peterson*, 173 Kan. 636, 251 P. 2d 221, where, dealing with the extent of the trial court's power and authority in partition cases, it is held:

"In an action to partition real estate under G. S. 1949, 60-2101 to 60-2114, it is held that in administering the provisions of the pertinent sections of the code, the trial court has the same powers as were exercised by chancery courts under equity practice, including full power to settle all questions involved on just and equitable principles." (Syl. ¶ 4.)

For other cases dealing with the same subject see *Hurley v. Painter*, 180 Kan. 552, 306 P. 2d 184; *Knutson v. Clark*, 169 Kan. 205, 217 P. 2d 1067.

Supplementing the facts as heretofore related it should be noted at this point that no special findings or conclusions were requested and that the court found generally for defendants and against the plaintiff so far as the judgment relates to the real question involved in this case, *i. e.*, whether, after a trial of the issues raised by the exceptions to the commissioners' report, the trial court erred in overruling such exceptions and in approving such report and partitioning the property accordingly.

Rules applicable to the disposition of claims of error, presently to be mentioned, relating to judgments where the findings of the court are general in nature are well-established and should now be mentioned.

One is that a general finding made by a trial court determines every controverted question of fact in support of which evidence has been introduced. (*Manville v. Gronniger*, 182 Kan. 572, 322 P. 2d 789; *Dryden v. Rogers*, 181 Kan. 154, 157, 309 P. 2d 409; *Sledd v. Munsell*, 149 Kan. 110, 86 P. 2d 567.)

Another is that a general finding by a trial court raises a presumption it found all facts necessary to sustain and support the judgment. (*Dryden v. Rogers*, 157, *supra;* and cases there cited; *Manville v. Gronniger*, supra.)

Still another is that findings of fact necessarily embraced in the general judgment rendered by the trial court, will not be disturbed on appeal if there is some evidence to sustain it. (*Stratton v. Hawks*, 43 Kan. 538, 23 Pac. 591; *Dryden v. Rogers*, 157 *supra.*)

Other rules of more general application are equally pertinent and should be noted.

The first of these is that a presumption of validity attaches to a judgment of the district court until the contrary is shown, and before this court will set aside a judgment it must affirmatively be made to appear by an appellant that the judgment is erroneous. (*Gillen v. Stangle*, 175 Kan. 364, 264 P. 2d 1079; *State, ex rel., .v. Henderson*, 179 Kan. 142, 292 P. 2d 718; *Vaughn v. Taylor*, 180 Kan. 190, 302 P. 2d 1004; *In re Estate of Snyder*, 181 Kan. 222, 225, 310 P. 2d 944.)

The second is that a verdict or finding of fact made by the trier of the fact and supported by evidence will not be disturbed on appeal. (*Boggs v. City of Augusta,* 180 Kan. 831, 308 P. 2d 72; *Hillebrand v. Board of County Commissioners,* 180 Kan. 348, 351, 352, 304 P. 2d 517; *Hale v. Ziegler,* 180 Kan. 249, 303 P. 2d 190; *Brent v. McDonald,* 180 Kan. 142, 151, 300 P. 2d 396.)

The third is that the determination of the weight and credence to be given oral evidence is exclusively the function of the trier of the facts and not a matter of appellate review. *Rupp v. Rupp,* 171 Kan. 357, 233 P. 2d 709.)

Turning to plaintiff's claims of error it is first urged the trial court abused its discretion in upholding the report of the commissioners when the evidence conclusively showed they were influenced by the appointing judge. There are at least two sound reasons why this contention cannot be upheld. In the first place our independent examination of the record discloses it does not sustain plaintiff's position as to the state of the evidence. In the next all contentions respecting that matter were presented to the court (an entirely different judge presiding) which resolved all questions of influence against plaintiff. That finding, which we pause to note finds support in the evidence, was necessarily embraced in the general judgment and, under the decisions to which reference has been previously made, cannot be disturbed on appellate review.

Next, directing our attention to the fact the property in question is located in an industrial area, it is argued parking facilities were not properly considered by the commissioners in making their report. Resort to the record discloses this question was submitted to the trial court, during the trial of the issues raised by the exceptions, on conflicting evidence; hence, since it must be regarded as having been determined contrary to plaintiff's position under the general judgment, it is not subject to review.

Another contention is that manifest injury results from partition to an industrial area when the value of an area partitioned into three tracts is much less after partition than the whole area prior to partition. Arguments advanced on this point are fallacious and will not be here labored because they are based entirely on testimony, adduced by plaintiff, touching the value of the involved twenty acres as a naked tract and refuse to recognize other evidence respecting the value of such property including the land, buildings

and equipment, at the time the commissioners made their report and the court viewed the premises.

Next it is claimed the trial court erred in adopting the commissioners' report and in partitioning the involved tracts of land to the parties, subject to utility easements and present utility lines wherever located and granting the parties the right to use and extend present rail facilities, without first determining the location of such utility lines and rights on existing railroad facilities. No authorities requiring action of that character are cited by plaintiff and we have difficulty in following arguments advanced in support of this action. Under such circumstances the rule announced by this court in *McCoy v. Fleming,* 153 Kan. 780, 113 P. 2d 1074, is applicable. There it is held:

> "Where, in connection with a contention the trial court erred, no citation of authorities is given in support, the supreme court may well conclude that counsel, after diligent search, has not been able to find any, and may affirm the judgment." (Syl. ¶ 2.)

Finally it is contended the court's action in approving the report of the commissioners and in partitioning the property in kind, in conformity with such report, results in manifest injury to the plaintiff. The trouble with all arguments advanced on that point from plaintiff's standpoint is that, under the provisions of our statute and decisions construing their force and effect, (1) the trial court was vested with full and complete discretionary power and authority to hear and dispose of all questions of fact relating to that issue, as well as all issues of fact pertaining to whether good cause had been shown by plaintiff for the sustaining of its exceptions to the report of the commissioners; (2) the general finding made by the trial court in the judgment determined all controverted questions of fact, relating to such issues and in support of which evidence was introduced at the trial, against the plaintiff; (3) appellate review, under the existing facts and circumstances, is limited to whether the trial court's action with respect to such issues is wholly unwarranted and clearly amounts to abuse of discretion. Nothing would be gained by detailed reference to the evidence of record or the arguments made by counsel respecting the questions now under consideration. It suffices to say our examination of the record discloses ample evidence to sustain and uphold the trial court's judgment that the property could be partitioned in accord with the report of the commissioners without manifest injury and that the plaintiff had failed

720

to show good cause why its exceptions and objections to such report should be sustained. It follows the trial court's action with respect to such matters cannot be held to be wholly unwarranted or based on abuse of discretion.

What has been heretofore stated and held compels an affirmance of the judgment.

It is so ordered.

ROBB and JACKSON, JJ., not participating.

---

### APPENDIX "A"

#### REPORT OF COMMISSIONERS

B & S ENTERPRISES vs. SAM E. RUDD, ELENORE RUDD, LEONARD A. LEVAND, & CELIA LEVAND.

### To: Honorable Howard Kline

The undersigned commissioners, each of them, have made a study of all of the physical property described herein for the purpose of partition in kind. Each of the commissioners has made a personal inspection of the interior and exterior of each of the buildings. The equipment which is part and parcel of this estate has been examined by the commissioners, and expert opinion with respect to operational equipment has been sought by them as a guide to the values of partition.

The realty was carefully examined, with particular attention given by the commissioners to the use to which it is put, the surrounding properties, public zoning which could effect the estate, and the income as derived from present use, as well as income potential to its highest and best use.

It is the considered judgment of the commissioners in unanimity, that partition in kind of the real and personal property in this estate, among the parties, according to their respective interests, can be done without manifest injury to the property or the parties in the following manner:

Parcels "A" and "B" (so designated on attached survey) shall be partitioned to Sam E. Rudd, Elenore Rudd, Leonard Levand, and Celia Levand, and shall represent a full interest to them of one fourth of the whole estate, more particularly described as follows:

Parcel "A"—The south half of the southwest quarter of the south-

west quarter of Section 4, Township 27 South, R. 1 E. of the 6th P. M., lying east of the center line of the North Wichita Drainage Canal right of way, except the north 16 feet thereof; the above description containing 3.1 acres, more or less, exclusive of the right of way for 21st Street.

Parcel "B"—A tract in the south half of the southwest quarter of the southwest quarter of Section 4, Township 27 South, R. 1 E. of the 6th P. M., described as follows: Beginning 359.8 feet east of the southwest corner of said Section 4, thence north at an interior angle of 90 degrees 20', 396.9 feet, thence east at an interior angle of 269 degrees 55', 209.5 feet, thence north at a right angle, 264.5 feet, more or less, to the north line of said south half of said southwest quarter of said southwest quarter, thence west on said north line, 517 feet, more or less, to the east right of way of the A. T. & S. F. R. R., thence southerly along said right of way to the south line of said Section 4, thence east to the point of beginning, containing 5.4 acres, more or less, exclusive of the right of way for 21st Street.

Parcel "C" shall consist of all other lands in this estate not specifically described above, and shall be partitioned to B & S Enterprises, Inc., and shall represent a full interest to it of three fourths of the whole estate, more particularly described as follows:

Parcel "C" described: All of the south ½ of the southwest ¼ of the southwest ¼ of section 4, township 27, R. 1, E. of the 6th P. M., Sedgwick County, Kansas, except the right-of-way of the Atchison, Topeka and Santa Fe Railway and North Wichita Drainage Canal, easements of record, and the east 30 feet of said south half of the southwest ¼ of the southwest ¼ of section 4, township 27, R. 1, E. of the 6th P. M., Sedgwick County, Kansas, EXCEPT parcels "A" and "B" heretofore described.

All monies now in the hands of Fernella Fowler as a part of this estate shall be divided among the interests as they appear, as of the date of approval of this report by the court, after first making determination of all bills due and payable, and paying same. Real Estate and Personal taxes shall be pro-rated as between the parties as their several interests may appear, and such proration shall be based upon the amounts paid for Real and Personal taxes in 1955, unless the approval date of this partition shall fall after the 1956 taxes become a lien, in which case, the 1956 taxes shall be used as the basis for proration. Should the bills payable, plus the prorated

taxes exceed the amount of monies on hand in this estate on the effective date of this partition, then in that event all parties hereto shall pay into the court a sufficient amount of money to make up the deficit, according to their several interests.

RICHARD R. SANTEE,

L. W. ROBERTS,

NESTOR WEIGAND.

## APPENDIX "B"

### FINDINGS OF FACT

B & S ENTERPRISES vs. SAM RUDD, et al.

Your commissioners have been guided by and have relied upon plats and other information furnished to them, which are made a part of this report. All buildings were measured by them to verify accuracy. K. O. Taylor, consulting engineer, was employed to make surveys which are a part of this report. Royal McShea, 655 North Hillside, Wichita, Kansas, was employed to give technical advice with respect to the refrigeration equipment and its value. Mr. McShea has had long experience in the field of heavy refrigeration.

Particular attention was given by your commissioners to the tenants in each of the buildings on this estate, with due regard to the length of leases involved and the ability of the several parties to perform.

All avenues of ingress and egress by rail, pedestrian, truck or auto traffic have been long established and should continue by easement until the need shall cease. In this partition, the commissioners have carefully followed the center line of Topeka Avenue, extended, as well as the center line of a natural and long established street running east and west, and parallel to 21st Street.

Each part and parcel partitioned herein should be given to the several interests subject to utility easements, however, each parcel divided has access to all utilities without use of or need for the use of any other parcel. All parcels should be granted the right to use and extend rail facilities.

In making this partition, your commissioners have used the center lines of natural city streets as the dividing line. They have divided the property in such manner that all parts and parcels divided can be served by utilities of all kinds without crossing over or under,

or interfering with any other part or parcel. Any part or parcel described in this partition can be operated from now on without suffering loss of income, present or future, by reason of separation. All parts and parcels divided by this partition can be served by police and fire protection as well after the separation as before.

The partition as outlined by your commissioners has been based on good planning, with the burdens of future logical streets and drainage falling equally on all interests to this partition. If the whole of the area were to be stripped of the present buildings and platted for its highest and best use, no better plan of subdivision could be imposed upon this land than the plan of partition outlined herein.

RICHARD R. SANTEE,
NESTOR WEIGAND,
L. W. ROBERTS.